IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,      ) | |
| )| |
| Plaintiff,      ) | |
| )| |
| v.      ) | Case No. 09-20075-01-JWL |
| )| |
| ROSIE M. QUINN,      ) | |
| )| |
| Defendant.      ) | |
| )| |
| _____)| |

## **MEMORANDUM AND ORDER**

On March 15, 2011, a jury convicted defendant Rosie Quinn of seven counts of failing to pay over employment taxes in violation of 26 U.S.C. § 7202 and two counts of failing to pay individual income taxes in violation of 26 U.S.C. § 7203.  This matter now comes before the Court on defendant's motion for judgment of acquittal or for a new trial (Doc. # 109), her supplemental motion for judgment of acquittal (Doc. # 123), and her supplemental motion for a new trial (Doc. # 124).[1]  For the reasons set forth below, the motions are **denied**.

_____

[1]Defendant's trial counsel filed her initial motion, which listed several bases for the motion without argument, on March 29, 2011, and the Court granted a total of four extensions, ultimately to August 4, 2011, for the filing of a supporting memorandum. Substitute counsel then filed the supplemental motions on August 3, 2011.

## I.   **Motions for Judgment of Acquittal**

### A.   *Interpretation of 26 U.S.C. § 7202*

By her initial motion seeking a judgment of acquittal, defendant asserts that the Court erred in denying her motion to dismiss Counts 1 through 7, which alleged failures to pay over employment taxes in violation of 26 U.S.C. § 7202.   Section 7202 criminalizes a person's willful failure to pay over taxes that must be collected, such as employment taxes.   *See id.*   By Memorandum and Order of February 3, 2011 (Doc. # 75), the Court interpreted Section 7202 to include a timing element, so that a person violates Section 7202 if she willfully fails to pay over the taxes after the due date for such payment; thus, the Court refused to dismiss the charges, despite defendant's recent payment of the amounts due.

Defendant has not offered any argument supporting her claim that the Court's ruling was erroneous.   Accordingly, for the reasons stated in its prior opinion, the Court reaffirms its construction of Section 7202, and it denies this basis for acquittal.

### B.   *Sufficiency of the Evidence*

By her initial motion, defendant also seeks acquittal on the basis that the evidence supporting her convictions was insufficient as a matter of law.   In her supplemental motion, defendant more specifically states that the Government failed to prove that she willfully failed to pay taxes.   In resolving such a challenge to the sufficiency of the evidence, the Court must determine whether, "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

2

elements of the crimes beyond a reasonable doubt." *United States v. Doddles*, 539 F.3d 1291, 1293 (10th Cir. 2008) (quotation omitted).  The Court must "resolve any possible conflicts in the evidence in favor of the Government and assume that the jury found that evidence credible." *Id.* at 1293-94 (citation omitted).  "While the evidence supporting the conviction must be substantial and do more than raise a mere suspicion of guilt, it need not conclusively exclude every other reasonable hypothesis and it need not negate all possibilities except guilt." *United States v. Burkley*, 513 F.3d 1183, 1188-89 (10th Cir. 2008) (internal quotation omitted).

Defendant has not provided any argument why the evidence was insufficient in this case.  At trial, the Government submitted evidence, and defendant herself conceded, that she failed to pay over employment taxes and failed to pay individual income taxes for the periods in question on the dates due, and that she was responsible for the payment of those taxes.  Defendant disputed only that those failures were willful, as required for convictions under the relevant statutes.  *See* 26 U.S.C. §§ 7202, 7203.  Concerning this element of the offenses, the Court instructed the jury as follows:

> An essential element of the crimes charged is that defendant must have acted willfully.  The word "willfully" means voluntarily and intentionally in violation of a known legal duty.  In other words, the defendant must have acted voluntarily and intentionally and with the specific intent to do something she knew the law prohibited, or to fail to do something she knew the law required; that is to say, with intent either to disobey or disregard the law.

> Conversely, the defendant did not act willfully if you find that she acted or failed to act because of negligence (even gross negligence), inadvertence, accident, mistake, reckless disregard for the requirements of

3

the law, ignorance of the law, or a good-faith belief, based on a misunderstanding of the law, that she was not violating any of the provisions of the tax laws.

*See, e.g.*, *Cheek v. United States*, 498 U.S. 192, 201-02 (1991).

The Court concludes that the Government presented sufficient evidence of willfulness by defendant to support the convictions. Defendant, an attorney, conceded in her testimony that she knew she had a duty to pay over the employment taxes and to pay income taxes by certain deadlines, and she in fact filed tax returns and forms without the accompanying payments. The jury could reasonably infer from the evidence of defendant's dealings with the IRS that she was attempting to put off having to pay for as long as she could. The jury also heard evidence, including evidence of her gambling and the expensive homes in which she lived, that defendant had access to significant funds that she could have paid to the IRS. The Government also presented evidence suggesting that defendant purchased one home in her sister's name, and the jury could reasonably infer that defendant was attempting to hide her assets from the IRS. At trial, defendant relied on her testimony that she had a gambling addiction, but the jury was free either not to believe that testimony or to conclude that she acted willfully despite the addiction.

The Court concludes that from the evidence, the jury could reasonably have found beyond a reasonable doubt that defendant voluntarily and intentionally failed to pay the IRS when she knew such payments were required by law, and thus that she acted willfully. Accordingly, the Court denies defendant's motions for a judgment of acquittal.

4

## II.    **Motions for a New Trial**

Defendant also seeks a new trial based on various alleged errors by the Court at trial.  With respect to defendant's request for a new trial, Rule 33 provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  "A motion for a new trial is not regarded with favor and is only [granted] with great caution."  *United States v. Herrera*, 481 F.3d 1266, 1269-70 (10th Cir. 2007) (internal quotation omitted).

### A.    *Rejection of Defendant's Proposed Instruction*

In her initial motion, defendant claims, without argument, that "[t]his Court erred by rejecting Defendant's proposed jury instruction regarding the lack of a timing element in 26 U.S.C. § 7202."  Based on the Court's interpretation of Section 7202, which the Court has now reaffirmed, *see supra* Part I.A, the Court's inclusion of a timing element in its instruction on Counts 1 through 7 was proper, and the Court denies this basis for a new trial.

### B.    *Evidence of Purchase of Property by Charlie Sessoms*

Defendant also makes the following claim in her initial motion, without any additional argument:  "This Court erred by denying Defendant's Motion in Limine and allowing the government to present evidence at trial regarding the purchase of a property made by Charlie Sessoms.  Defendant's Motion in Limine should have been granted as this evidence was irrelevant."  At trial, the Government submitted evidence that a particular residence (the "Canaan Lake Property") was purchased in the name of Ms.

Sessoms, defendant's sister and employee, for $375,000; that the earnest money deposit for that purchase came from defendant's business trust account; that defendant lived in the house and that Ms. Sessoms lived elsewhere; and that defendant paid monthly sums to her sister from her trust account that corresponded with Ms. Sessoms's monthly mortgage payments. Defendant conceded that she paid her sister rent in the amount of the mortgage payments. Thus, the evidence was relevant to whether defendant was attempting to hide assets and whether defendant had significant assets that she purchased with money that could have been paid to the IRS. Both points were relevant to the issue of defendant's willfulness. *See, e.g.*, *United States v. Blanchard*, 618 F.3d 562, 569-70 (6th Cir. 2010) (evidence of ability to pay, including discretionary purchases, is probative of willfulness); *United States v. Ellis*, 548 F.3d 539, 542-43 (7th Cir. 2008) (evidence of lavish expenditures was relevant to issue of willfulness).

The Court concludes that it did not err in ruling at trial that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403. Therefore, the Court denies this basis for a new trial.

### C.      *Photographs of Houses*

Finally, defendant claims in her initial motion, that the Court erred in admitting into evidence one photograph each of two residences in which defendant lived. Defendant's only argument is that such evidence was "irrelevant, cumulative, and unduly prejudicial." In her motion in limine, defendant argued that the photographs were cumulative because the jury would already have evidence of the value of those homes.

As noted above, however, the Government was entitled to present evidence of significant expenditures by defendant, and the Court agrees with the Government that the photographs had probative value beyond the mere valuations to show defendant's lifestyle while she owed significant amounts of taxes—again, to show defendant's willfulness. Only one picture of each house was admitted, and the Court concludes that the probative value of the photographs was not substantially outweighed by the danger of unfair prejudice or the needless presentation of cumulative evidence. *See* Fed. R. Evid. 403. The Court also concludes that any error in the admission of these photographs was harmless, in light of the evidence of the value of the homes and the evidence that Ms. Sessoms acted as a straw purchaser for defendant with respect to one of the homes. *See* Fed. R. Evid. 103(a). Therefore, the Court denies this basis for a new trial.

### D.      Objection Sustained at Trial

In her supplemental motion for a new trial, defendant cites an incident when Government witness Huan Nguyen, an IRS Special Agent, was asked a question on direct examination to which the Court sustained an objection. Defendant argues that "it was too late to unring the bell and this testimony severely prejudiced Ms. Quinn." Defendant does not explain, however, why any such error compromised the trial to such extent that a new trial is warranted.

At trial, Agent Nguyen testified that, in a meeting with defendant, he did not inform her of specific charges that he was considering. He was then asked which

7

charges he was investigating at that point, and he responded as follows:

> I had the gamut open.  I had evasion of payment; I had conspiracy,
> obviously.  What we're looking at here is 7202 . . .

Defense counsel then interrupted with an objection.  At sidebar, counsel explained that

he objected to a discussion of other possible crimes for which defendant was not

charged.  The Court responded that it appeared that the witness had already answered the

question, and that it did not seem that the witness had intended to leave the impression

that defendant did commit other crimes.  The Court explained that Government counsel

could have the witness explain that he considers a number of things at the beginning of

an investigation, but he did not need to go through a "laundry list" of statutes.

Government counsel then resumed his examination with the following question:

> [Y]ou don't need to tell us the code section or titles, but when you first
> received this case with respect to Ms. Quinn, what other potential crimes
> were you looking at the evidence – or thought that you could proceed in
> your investigation with Ms. Quinn?

Defense counsel then objected again.  The Court ruled as follows:

> Sustained.  That is not what I told you was relevant.  It isn't relevant what
> other ones he actually thought about.  It may be relevant that he didn't tell
> her a specific statute that he thought she might have violated because he
> didn't know until he had looked at all the facts.  That might be relevant if
> that was his state of mind, and you may inquire about that.

Government counsel then proceeded in his questioning along the line suggested by the

Court, and defense counsel did not object further.

In her motion, defendant appears to take issue with the question following the first

sidebar, to which the Court sustained an objection.  The witness did not answer the

8

question, however; thus, there was no testimony elicited in response to the improper question, and there was no bell to be "unrung". Defendant did not seek any limiting instruction at the time, nor did she move for a mistrial. The jurors were instructed that questions by counsel did not constitute evidence, and that they should consider only the evidence admitted in the form of testimony and exhibits. Therefore, the Court concludes that this incident at trial did not represent an error warranting a new trial.

E.     *Testimony of Agent's "Personal Opinion" of Defendant's Honesty*

In her supplemental motion for a new trial, defendant also complains, without further argument, that Agent Nguyen "repeatedly testified regarding his personal opinion of Ms. Quinn's honesty." At trial, Agent Nguyen testified on direct examination, without objection, that defendant was evasive and uncooperative in answering questions in a meeting with him. The witness then had the following exchange with Government counsel, which defendant cites in her motion:

Q.   When Ms. Quinn stated that she intended to pay her taxes, what was your impression of that statement?

A.   I really didn't believe her. As the file stated, before there were a lot of other statements to say, I will work, I will pay whatever it may be. It's just – to me, it was just another answer in a long line.

Q.   Was the fact that the largest payment you saw on her tax history was the payment ordered by the bankruptcy court, did that contribute to your impression of her answer to that question?

A.   That's correct. If you look at that chart, two of the payments – pardon me. The payments were usually made in compliance with trying to do something else, yes, or requested by other individuals.

9

> Q.    Was there anything from her past that indicated to you that she intended to pay her taxes?
>
> A.    Not to me, no.

Defendant did not object to this testimony at trial; thus, the Court reviews the admission of this testimony only for plain error affecting substantial rights.  *See United States v. Schene*, 543 F.3d 627, 640 (10th Cir. 2008); Fed. R. Evid. 103.

Defendant has not cited any authority in support of this assertion of error, nor has she explained why the testimony was improper.  It is true that the credibility of a witness may not ordinarily be the subject of expert testimony.  *See United States v. Call*, 129 F.3d 1402, 1406 (10th Cir. 1997) (affirming exclusion of polygraph evidence).  In this exchange, however, Agent Nguyen was not testifying concerning defendant's general credibility as a witness.  To the contrary, the witness was explaining the basis for his belief that defendant was being evasive and uncooperative in answering his questions—evidence that was probative on the issue of defendant's willfulness.  Defendant has not shown that this testimony should not have been admitted.

The Court further concludes that any such error would have been harmless.  The jury was presented with the history of defendant's dealings with the IRS, and it was free to determine the credibility of defendant, who took the stand, on its own.  Moreover, in stating that he did not believe her statement that she intended to pay, Agent Nguyen did not give an opinion on the ultimate issue of whether defendant acted willfully, which question the jury answered.  Accordingly, the Court concludes that it did not commit

plain error affecting substantial rights in failing to exclude this testimony by Agent Nguyen, and the Court denies this basis for a new trial.

F.    "False or Misleading" Testimony by Government Witnesses

In her supplemental motion for a new trial, defendant cites one excerpt from testimony by Agent Nguyen and a number of excerpts from testimony by Government witness David Melcher, an IRS Revenue Officer, as examples in support of her general argument that she "was denied a fair trial based on government witnesses providing false and/or misleading testimony which prejudiced Ms. Quinn."  In each case, defendant failed to object to the challenged testimony at trial.  Thus, the Court reviews each claim only for plain error.

Moreover, defendant has not cited to any legal authority or explained the how the admission of false or misleading testimony may serve as the basis for a new trial.  The Tenth Circuit has stated:  "A prosecutor's knowing use of false testimony deprives a criminal defendant of due process, warranting a new trial if there is a reasonable likelihood the false testimony affected the judgment."  *Romano v. Gibson*, 239 F.3d 1156, 1175 (10th Cir. 2001).  Defendant has not shown, or even argued, however, that the prosecutor in this case knowingly elicited false testimony from Officer Melcher or Agent Nguyen.  The Tenth Circuit has also made clear that in the absence of a recantation of testimony by a witness, the fact that other evidence contradicts the witness's testimony may provide fodder for impeachment, but it does not provide a basis for a new trial.  *See, e.g.*, *Smith v. Roberts*, 115 F.3d 818, 820 (10th Cir. 1997); *United*

*States v. Kelley*, 929 F.2d 582, 586 (10th Cir. 1991).  The Court concludes that defendant has failed to show a proper basis for a new trial with respect to any of the testimony that she cites in her motion.  The Court addresses those excerpts more specifically in turn.

1.      In five instances, defendant complains that Officer Melcher testified to facts that either conflicted with or were absent from Exhibit 276.  On cross-examination, Officer Melcher identified that document as an "ICS history transcript," representing a chronological history of all significant events in defendant's case.  Defendant appears to argue that any testimony that differed from the record in Exhibit 276 or that concerned an event not listed on the exhibit must therefore have been false.  Specifically, defendant cites the following testimony by Officer Melcher:  (a) that defendant was "nonchalant" in a meeting with him about her failure to make tax deposits (while Exhibit 276 contained no such description); (b) that he suggested to defendant that instead of paying her sister $9,000 in cash, she should pay her $5,000 and use the other $4,000 to make tax payments (while Exhibit 276 records no such suggestion); (c) that defendant told him she paid payroll to two employees, and later told him that she paid additional employees (while Exhibit 276 lists four names of employees identified by defendant at the meeting); (d) that he conducted a thorough investigation, including reviewing bank records, during which he determined whether to contact a fraud referral specialist and then decided to meet with a criminal investigator (while Exhibit 276 indicates that the "trigger" for the referral for criminal investigation was a particular deposit by defendant); and (e) that defendant paid her sister $9,000 in cash per month in wages (while Exhibit 276 states

12

that defendant wrote checks to her employees).

The Court notes a number of problems with defendant's challenges to this testimony. First and foremost, although defendant had Officer Melcher identify Exhibit 276, clearly for impeachment purposes, the document was not offered or admitted into evidence. Nor has defendant provided a copy of the document with her supplemental motion. Thus, defendant has not provided any means for the Court to compare Officer Melcher's testimony with the exhibit. Moreover, in describing the document, Officer Melcher did not state that the document records every single action or statement from his meeting with defendant. Indeed, at one point in his testimony, Officer Melcher testified that he believed one figure from that exhibit was incorrect. Thus, the fact of an inconsistency between the testimony and the document does not indicate that the testimony was false or misleading (let alone, that the testimony was intentionally false or misleading, or that Government counsel intended to elicit false testimony).

Defendant was free to use Exhibit 276 on cross-examination or otherwise to attempt to impeach Officer Melcher's credibility with respect to these particular points. The fact that the testimony may have differed from the document (although the Court cannot determine if there are in fact any such inconsistencies) does not mean that the testimony was improperly admitted. The Court further concludes that, even if such testimony were inadmissible, any such error in admitting the testimony would be harmless, in light of the fact that the alleged inconsistencies concern relatively minor details. Thus, the Court concludes that the admission of this testimony by Officer

Melcher does not constitute plain error affecting substantial rights of defendant.

2.      Defendant's first example in support of her argument that Government witnesses provided false or misleading testimony is the following testimony by Officer Melcher:

> A.      . . .   And as I recall, she had a very egregious history of nonpayment of taxes.  By egregious I mean years, if not close to a decade, of nonpayment of taxes.
>
> Q.      Was that a common occurrence for you, to see people in that sort of situation as a revenue officer?
>
> A.      No.  Like I said, it was probably the most egregious case I had come to, that I had worked up to that time.

Defendant has not offered any argument concerning this excerpt; nor has defendant shown or offered any evidence that Agent Melcher's statements were not accurate and truthful.  Moreover, even if it could be shown that Agent Melcher did have a more "egregious" case, the use of such hyperbole would merely present an opportunity for impeachment and would not make the testimony inadmissible.  Defendant did not lodge an objection at the time, and the Court concludes that the admission of this testimony did not constitute plain error affecting substantial rights.

3.      Defendant also cites Officer Melcher's testimony that defendant told him that her firm averaged $20,000 in income per month.  Officer Melcher then testified that bank records showed deposits that significantly exceeded that amount in 2002, 2003, and 2004.  Defendant argues that such testimony was false or misleading because the deposits would have included settlement payments that would not constitute business

14

income.  Defendant has not cited to any such evidence admitted at trial, nor has defendant provided any such evidence with her supplemental motion; thus, defendant has not shown that the deposits cited by Officer Melcher in fact included amounts that did not represent income.  Defendant was free to offer such evidence at trial or to attack Officer's Melcher's testimony on cross-examination.  Defendant did not object to this testimony at trial, and she has not shown that the admission of that testimony constituted plain error.  Nor has defendant shown that the Government knowingly elicited false testimony.  Accordingly, the Court denies this basis for a new trial.

4.     Defendant next cites Officer Melcher's testimony, noted above, that he analyzed records and made determinations whether to refer the case to a fraud specialist and ultimately to a criminal investigator (Agent Nguyen).  Defendant argues that this testimony was false or misleading because, in fact, Officer Melcher completed a fraud development status report (FDSR) the day after he met with defendant, before examining the financial documents.  The Court rejects this argument.  The FDSR was not admitted into evidence, defendant did not provide the Court with a copy, and defendant has failed to provide any evidence explaining the significance of an FDSR.  In the absence of such evidence, the Court cannot conclude that this testimony was false or misleading.  Moreover, defendant was free to cross-examine Officer Melcher concerning this issue, and defendant failed to object to the testimony.  The Court concludes that the admission of this testimony did not constitute plain error affecting substantial rights of defendant.  Nor has defendant shown that the Government knowingly elicited false testimony from

Officer Melcher that affected the convictions.  Accordingly, the Court denies this basis for a new trial.

      5.     Finally, defendant cites Agent Nguyen's testimony that he saw no evidence of a recurring mortgage or rental payment by defendant for any residence other than the Canaan Lake Property.  Defendant argues that such testimony was inaccurate because certain documents show mortgage payments by Ms. Sessoms on her own house on dates that correspond with payments to Ms. Sessoms from defendant, which therefore suggest that defendant was indeed paying for another residence.  The Court rejects this argument as a basis for a new trial.  The documents cited by defendant were not admitted into evidence, and defendant has failed to provide them with her motion; thus, defendant has not shown that this testimony was false or misleading.  Moreover, the fact that Ms. Sessoms made payments on her own residence at the end of each month does not mean that Agent Nguyen was wrong when he stated that he saw no evidence of payments by defendant.  Defendant was free to try to make this argument at trial, including in cross-examining Agent Nguyen.  Defendant did not object to this testimony at trial, and any error in admitting the testimony was harmless, as the fact that defendant may have paid for *two* properties purchased by Ms. Sessoms instead of one would not have eliminated the inference that defendant used Ms. Sessoms as a straw purchaser for the residence in which defendant lived.  Thus, the admission of this testimony did not constitute plain error affecting substantial rights, and defendant has failed to show that the Government knowingly elicited false testimony affecting the convictions.

G.      *Evidence Concerning Tax Years 1992 to 2002*

The final argument in defendant' supplemental motion for a new trial reads in its entirety as follows:

> The court erred by admitting into evidence Ms. Quinn's tax liabilities and collection efforts prior to the periods alleged in the Indictment (2003).  It is the conduct subsequent to the time when the tax is due that is probative.  Prior conduct is irrelevant and prejudicial.

Defendant has not cited any authority in support of this argument.  In fact, courts have held that a defendant's past record is admissible to show willfulness.  *See, e.g.*, *United States v. Daraio*, 445 F.3d 253, 264-66 (3d Cir. 2006) (citing cases).  In this case, the Court concludes that such evidence was relevant to show defendant's willfulness, and that such probative value was not substantially outweighed by the danger of unfair prejudice.  *See* Fed. R. Evid. 403.  Accordingly, the Court's denies defendant's motions for a new trial.

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion for judgment of acquittal or for a new trial (Doc. # 109) is **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT defendant's supplemental motion for judgment of acquittal (Doc. # 123) is **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT defendant's supplemental

17

motion for a new trial (Doc. # 124) is **denied**.

IT IS SO ORDERED.

Dated this 31st day of August, 2011, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge